UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ST. CHARLES PROPERTY ASSOCIATION,<br>3201 ST. CHARLES CONDOMINIUM<br>HOMEOWNERS ASSOCIATION, INC. | CIVIL ACTION |
| VERSUS | NO: 09-2504 |
| CERTAIN UNDERWRITERS AT LLOYD'S<br>LONDON (AKA PROCTOR FINANCIAL INC.,<br>EQUITY PARTNER INSURANCE SERVICES<br>INC., FOREST INSURANCE FACILITIES,<br>BURNS & WILCOX, MARTIN INSURANCE<br>AGENCY, INC., N-SURANCE OUTLETS, INC.,<br>INSURISK EXCESS & SURPLUS LINES) | SECTION: "C" (3) |

## ORDER & REASONS[1]

This matter is before the Court on the issue of subject matter jurisdiction in this diversity suit. The Court ordered counsel to submit memoranda on the issue by April 30, 2009. On June 23, 2009, the Court further instructed Defendant to submit evidence supporting its contention that one of the "names" on the policy is a citizen of the State of Louisiana. Having reviewed the record, memoranda of counsel, and the law, the Court has determined that it does not have subject matter jurisdiction for the following reasons.

**I. FACTUAL BACKGROUND**

Plaintiff homeowners originally filed suit in the Eastern District of Louisiana as part of the mass insurance case of *Abadie II.*, Civil Action No. 07-5112, to recover payment for property damage under their insurance policy with Certain Underwriters at Lloyd's London ("Lloyd's")

---

[1] Francisco A. Besosa-Martínez, a third-year student at Tulane University Law School, assisted in preparing this opinion.

following Hurricane Katrina. Rec. Doc. 1. Magistrate Judge Wilkinson, Jr. severed *Abadie II*. Rec. Doc. 1-3. Plaintiffs then filed an individualized amended complaint against the insurer. Rec. Doc. 1.

On August 29, 2005, Hurricane Katrina allegedly damaged Plaintiffs' property. Rec. Doc. 1 at 3. Plaintiffs estimate the damages to be $1,564,350.87 for dwelling. Rec. Doc. 4-4. Plaintiffs also seek double damages pursuant to LSA R.S. § 22:1220, penalties pursuant to LSA R.S. § 22:658, attorney fees, and court costs. Rec. Doc. 4 at 5. At the time of this event, Plaintiffs claim an insurance policy covered the damaged property with Lloyd's, a foreign citizen doing business in the State of Louisiana. Rec. Doc. 1. at 1. Plaintiffs claim the amount of insurance coverage "was based on the estimated cost of replacing the home and its contents, and amount estimated by the Defendant or an agent authorized by them to determine the replacement cost of each individual home and its contents." Rec. Doc. 1 at 3. Furthermore, Plaintiffs have furnished the Court with professional estimates detailing the damages and repairs needed. Rec. Doc. 5-3. As of the date of filing, Plaintiffs claim to have received $689,955.38 from Defendant pursuant to the insurance policy.[2] Rec. Doc. 4-2 at 2.

Defendant alleges, however, that this Court lacks jurisdiction because there is no diversity of citizenship. Rec. Doc. 11 at 5. To support this claim, Defendant presented the court with an unsworn declaration, signed by Sally Dunning, a citizen and resident of the United Kingdom who is employed by the Corporation of Lloyd's as a Technical Administrator. Rec. Doc. 36-2 at 1. In her signed declaration, Ms. Dunning asserts that one of the "names" on Plaintiffs' insurance policy was

---

[2]The Court makes no finding as to the sufficiency of this proof with regard to establishing the existence of the jurisdictional minimum.

2

a citizen of the State of Louisiana (1) on August 29, 2005, (2) when Plaintiffs were named plaintiffs in the above mentioned *Abadie II*, and (3) when Plaintiffs filed the Supplemental and Amending Complaint that originated this action. Rec. Doc. 36-2 at 2-3. Moreover, Ms. Dunning states that the "name" in question was not only on Plaintiffs' insurance plan, but also participated in one of the Syndicates 'that acted as [one of the] lead underwriters." Rec. Doc. 36-2 at 2. Plaintiffs oppose the entry of Ms. Dunning's statement because it (1) was not signed before a notary public and (2) does not provide the name and address of the "name" that allegedly resides in Louisiana. Rec. Doc. 43.

## II. LAW & ANALYSIS

### a. Applicable Law

Subject matter jurisdiction is awarded to federal courts in "civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between--(1) citizens of different States; (2) citizens of a State and citizens or subjects of a foreign state; [and] (3) citizens of different States and in which citizens or subjects of a foreign state are additional parties[.]" 28 U.S.C.A. § 1332. It is well-established precedent that diversity of citizenship requires that there be complete diversity between the parties:

> "The [Supreme] [C]ourt understands these expressions to mean, that each distinct interest should be represented by persons, all of whom are entitled to sue, or may be sued in the federal courts. That is, that where the interest is joint, each of the persons concerned in that interest must be competent to sue, or liable to be sued, in those courts."

*Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267 (1806). Thus, diversity of citizenship requires that "each defendant [be] a citizen of a different State from each plaintiff." *Owen Equip. & Erection Co.*

3

*v. Kroger*, 437 U.S. 365, 373 (1978). Furthermore, when determining who is a party, courts apply the "real-parties in interest" test.

When doubt arises as to the existence of complete diversity, the party claiming diversity jurisdiction may submit an affidavit showing that diversity of citizenship exists. *See Dausch v. Rykse*, 52 F.3d 1425, 1427, fn. 1 (7th Cir. 1994)("The initial jurisdictional statement indicated that the requirement of complete diversity of citizenship may be lacking. However, pursuant to the order of this court, [plaintiff] filed an affidavit showing that complete diversity of citizenship exists."). An "affidavit" is "[a] voluntary declaration of facts written down and sworn to by the declarant before an officer authorized to administer oaths, such as a notary public." *Black's Law Dictionary* 62 (8th ed. 2004). Thus, an unsworn affidavit is considered deficient and not taken into consideration by the court. *See Nissho-Iwai American Corp. v. Kline*, 845 F.2d 1300, 1306 (5th Cir. 1988)("It is a settled rule in this circuit that an unsworn affidavit is incompetent to raise a fact issue precluding summary judgment.").

There is a statutory exception, however, that permits "the use in Federal proceedings of unsworn declarations given under penalty of perjury in lieu of affidavits." *Carter v. Clark*, 616 F.2d 228, 230 (5th Cir. 1980)(*quoting* H.R. Rep. No. 94-1616, 94th Cong., 2d Sess. 1, reprinted in (1976) U.S. Code Cong. & Admin. News, pp.5644, 5644). Under 28 U.S.C. § 1746, all matters that are permitted to be supported, evidenced, established or proven by affidavit "may, with like force and effect, be supported, evidenced, established, or proved by [an] unsworn declaration" as long as the affiant subscribes to the statement under penalty of perjury. If the declaration is made outside the United States, the affiant may do this by stating: "I declare (or certify, verify, or state) under penalty

4

of perjury under the laws of the United States of America that the foregoing is true and correct." 28 U.S.C. § 1746(1). Furthermore, the language of the statute is very inclusive and the only exceptions are that "unsworn written declaration(s) given under penalty of perjury may not be substituted for (1) deposition(s), (2) an oath of office, or (3) a document required to be signed before a specified official other than a notary." *Carter*, 616 F.2d at 230 (*quoting* H.R. Rep. No. 94-1616 at 2., reprinted at (1976) U.S. Code cong. & Admin. News, p. 5645. Whether or not this opens the judicial process to some abuse is not for the courts to decide; the court "must only determine what Congress says the law is." *Carter*, 616 F.2d at 231.

Federal courts across the nation have agreed, though through different rationales, that when determining the diversity of citizenship of the parties in a case involving Lloyd's of London, all the "names" must be taken into consideration. *See generally McAuslin v. Grinnell Corporation*, 2000 WL 1059850 *3-*4 (E.D. La. Aug. 1, 2000)(Discussing how the Second and Seventh Circuit both reached the conclusion that the citizenship of each "name" is taken into consideration, agreeing with the Seventh Circuit's analysis and disagreeing with the Sixth Circuit rationale that only the citizenship of the lead underwriters should be taken into account.); *see also E.R. Squibb & Sons, Inc. v. Accident & Casualty Insurance Co.*, 160 F.3d 925, 939 (2d Cir. 1998)(Here, the Second Circuit held that when a Lloyd's underwriter is sued in a representative capacity, all of the Names must be diverse); *Indiana Gas Co. v. Home Ins. Co.*, 141 F.3d 314, 317 (7th Cir. 1998)(After finding Lloyd's was analogous to a general partnership, the Seventh Circuit held that "the underwriting syndicates have the citizenships of every name"); *Queen Victoria Corp. v. Ins. Specialists of Hawaii, Inc.*, 711 F.Supp 553, 544 (D.Haw. 1989)("Since Lloyd's is an unincorporated group of underwriters, its

5

citizenship is determined by the citizenship of all of its members."); *Bath Iron Works Corp. v. Certain Member Companies of the Institute of London Underwriters*, 870 F.Supp 3, 7 (D.ME. 1994)(The Court held that the citizenship of all underwriters (both active and inactive) must be considered when determining diversity jurisdiction); *Lowsley-Williams v. North River Ins. Co.*, 884 F.Supp 166, 173 (D.N.J. 1995)("[T]he plaintiffs must have pled the citizenship of each name participating in the North River reinsurance contracts in order for this Court to have diversity jurisdiction."); *Transamerica Corp. v. Reliance Ins. Co. of Illinois*, 884 F.Supp. 133, 139 (D.Del. 1995)(The citizenship of Lloyd's syndicates are determined by the citizenship of all syndicate members). The only time this reasoning does not explicitly apply in the Fifth Circuit is when a "name" sues, or is sued, in its individual, rather than its representative capacity. *See Corfield v. Dallas Glen Hills LP*, 355 F.3d 853, 854 (5th Cir. 2003). The sole case claiming that only the citizenship of the head underwriter is taken into account when it is sued in its representative capacity is *Certain Interested Underwriters at Lloyd's, London, England v. Layne*, 26 F.3d 39, 43-44 (6th Cir. 1994).

### b. Analysis

Defendant has presented sufficient evidence to claim that the requirement of complete diversity is not met. In regards to diversity of citizenship, Defendant relies on an unsworn declaration by Ms. Sally Dunning, a Lloyd's employee. In her declaration, Ms. Dunning affirms that she is a Lloyd's employee, has reviewed the records pertaining to Plaintiffs' insurance policy, and that these records show that a "name" ascribed to Plaintiffs' insurance policy was a resident of Louisiana at the time Hurricane Katrina hit, when Plaintiffs were named as a plaintiffs in the mass

civil action Abadie II, and when Plaintiffs filed this suit. Rec. Doc. 36-2 at 2. Plaintiffs object to the unsworn statement because (1) it is not properly notarized and (2) does not provide specific information pertaining to the "name" (i.e. the name of the party, their physical Louisiana address, etc.). Rec. Doc. 43. The Court examines these points in turn.

Plaintiffs' first contention - that Ms. Dunning's statement cannot be considered by the Court because it is not duly notarized - is partially correct. It is true that an unsworn affidavit is not sufficient to prove a particular fact. *Kline*, 845 F.2d at 1306. Congress, however, has specifically carved out an exception for unsworn declarations that follow a specific format and use certain language. *See* 28 U.S.C. § 1746. Here, Ms. Dunning's written declaration follows this predetermined format and inserts the exact language prescribed in the statute for when the written declaration is written outside of the United States. Although allowing parties to verify their own assertions "with only the penalty of perjury to ensure their truthfulness may open the courts to some abuse[,]" the task imposed upon this Court is to "determine what Congress says the law is." *Carter*, 616 F.2d 231. Therefore, because Ms. Dunning's unsworn declaration meets the requirements outlined in 28 U.S.C. § 1746, this Court cannot dismiss her written statement simply because it is not notarized.

Furthermore, this Court is equally unable to dismiss Ms. Dunning's declarations because of the fact that she did not provide the name and address of the "name" that is a citizen of Louisiana. Plaintiffs' objection is clearly a legitimate concern that, if an affiant is not required to provide this kind of information, the court system is likely to be abused in certain circumstances by those who present affidavits or unsworn statements supporting their own contentions. As stated before, however, this is an exception that has been deliberately put in place by Congress and it is the law

7

of the United States. As such, as long as the unsworn declaration "is subscribed by [Ms. Dunning], as true under penalty of perjury," this Court must accept the statements contained in Ms. Dunning's unsworn declaration as true.

Finally, based on the specific facts presented here, this Court–adopting the majority view that the citizenship of all "names" should be considered for purposes of diversity jurisdiction–must dismiss this case for lack of subject matter jurisdiction. Ms. Dunning's statement point out that one of the "names" on Plaintiffs' insurance policy was a citizen of Louisiana (1) on August 29, 2005 (the day Hurricane Katrina made landfall in New Orleans and caused damage to Plaintiffs' property), (2) when Plaintiffs were named plaintiffs in the above mentioned *Abadie II*, and (3) when Plaintiffs filed the Supplemental and Amending Complaint that originated this action. Rec. Doc. 36-2 at 2-3. Thus, under the majority view, Defendant has demonstrated that there is no diversity of citizenship between the parties.

In any event, the Plaintiffs have failed to provide proof sufficient to support a finding that subject matter jurisdiction exists. That shortcoming mandates dismissal.

**III. CONCLUSION**

Accordingly, **IT IS ORDERED** that the case be **DISMISSED** for lack of subject matter jurisdiction under 28 U.S.C. § 1332.

New Orleans, Louisiana, this 2nd day of October, 2009.

                                      **HELEN G. BERRIGAN**
                                      **U.S. DISTRICT COURT JUDGE**